FILED - GR
October 5, 2007 11:31 AM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:_____/_____

# UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.

KALIDAS PRABHUDAS PATEL
1104 W. Washington Street,
Greenville, Michigan 48838
(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER:  1:07-MJ-378

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

On or about October 4, 2007, in Montcalm County, in the Western District of Michigan, Southern Division, the defendant did (Track Statutory Language of Offense)

knowingly and intentionally attempt to unlawfully bring to the United States eight aliens without proper official authorization,

in violation of Title 8 , United States Code, Section 1324 .

I further state that I am a Special Agent for Immigration and Customs Enforcement
(Official Title)
and that this complaint is based on the facts set forth in the attached Affidavit.

_____
Signature of Complainant-KARL VLIETSTRA

Sworn to before me and subscribed in my presence,

October 5, 2007
Date and Time Issued

at    Grand Rapids, Michigan

Honorable JOSEPH G. SCOVILLE
United States Magistrate Judge
(Name & Title of Judicial Officer)

_____
Signature of Judicial Officer

Affidavit in Support of Complaint

I, Karl Vlietstra, being duly sworn, state as follows:

1.   I am a Senior Special Agent – Criminal Investigator with the U.S. Department of Homeland Security – U.S. Immigration and Customs Enforcement (DHS/ICE), currently assigned to the Grand Rapids. Michigan office. I have been so employed since April 2001. I was previously assigned as a Narcotics Detective with the Michigan State Police - Southwest Enforcement Team for fifteen months and employed as a Deputy Sheriff - Road Patrol for four years. Throughout my law enforcement career, I have been involved in the investigation of violent crimes. drug crimes. and crimes involving fraud and immigration violations. I have gained experience in the conducting of such investigations through training seminars, classes, and everyday work related to these types of investigations.

2.   I initiated an investigation into Kalidas Prabhudas PATEL, DOB: 05/1/1974, as to possible alien smuggling, after being advised that PATEL, an employee or owner of the Flat River Inn, located in Greenville, Michigan, had approached a guest (hereinafter CI) of the hotel and offered to pay the guest $50,000 to $150,000 to smuggle PATEL's brother into the United States aboard an aircraft.

3.   On July 31, 2007, Special Agent Fraser and I conducted an interview of the CI at the Grand Rapids ICE office. The CI had previously contacted me via telephone and wanted to provide information about PATEL. During the course of the interview the CI provided the following information:

a.   The CI stated that he/she is an employee of Alticor, 7575 Fulton Street, Ada, Michigan, and has been employed at Alticor for the past 13 years. The CI stated that he/she rented a room at the Flat River Inn, Greenville, Michigan, in March of 2007. and he/she stayed at this Inn for approximately three months.

b.   The CI stated that it was during this time period, while staying at the Inn, that he/she became acquainted with who he believes to be the owner of the Inn, Kalidas PATEL. The CI stated that he/she knew PATEL as "Mike" and he/she spoke with PATEL on several occasions. During one of these conversations, PATEL asked the CI where he/she was employed and the CI explained that he/she was employed by Alticor and that Alticor did international business with approximately 63 countries. PATEL asked the CI if Alticor had private jets and whether or not these jets flew into foreign countries. The CI stated that the Alticor company did and did indeed fly to several foreign countries. PATEL then asked the CI if it was possible to fly a foreign person into the United States aboard one of Alticor's jets. The CI stated that it was possible and surmised that Alticor jets did this as a matter of routine given the correct Visa/Passport and required forms. PATEL asked the CI to help get his (PATEL's) brother into the United States aboard one of these aircraft. The CI advised PATEL to just obtain a Visa for his brother and pay for a commercial flight to the United States. PATEL then advised the CI that there were

problems and his brother could not get a passport. PATEL then stated that he would be willing to pay the CI $50,000 to $150,000 to smuggle his brother into the United States from Pakistan aboard one of Alticor's aircraft. The CI stated that he/she had at least three or four serious conversations with PATEL in which PATEL requested he/she help smuggle his brother into the United States via one of Alticor's aircraft.

c.    The CI stated that prior to staying at the Flat River Inn, he/she had never met PATEL before and does not have any personal relationship with PATEL nor any of PATEL's associates. The CI stated that PATEL had approached him/her with the idea of smuggling PATEL's brother into the United States and that he/she believes PATEL was serious about attempting to pay to smuggle his brother into the United States aboard an Alticor jet. The CI stated that he/she has undergone some Hazardous Material (HAZMAT) training at Alticor and it was this training along with his own common sense that led him to contact law enforcement regarding PATEL's offer.

d.    The CI stated that he/she does not know the name of PATEL's brother and the last time he/she has spoken with PATEL was when he/she moved out of the Flat River Inn in June 2007. The CI stated that he/she embellished his/her role at Alticor to PATEL and even made comments to PATEL that he/she had taken international flights aboard Alticor aircraft. The CI advised PATEL that he/she would check to see if he/she could help PATEL with his request. The CI stated that he/she was just talking but realized PATEL was requesting help with something that was illegal, so he/she reported it to police. The CI stated that he/she believed PATEL was capable of paying such a large amount of money to get his brother smuggled into the United States and that the CI would be willing to meet with PATEL and assist ICE with gathering information and evidence.

4.    On September 27, 2007, ICE Special Agents conducted surveillance of the CI as he/she met with Kalidas PATEL, at the Flat River Inn, 1104 W. Washington Street, in Greenville, Michigan. The purpose of this surveillance was to make contact with PATEL and inquire about his continued interest in his soliciting attempts to smuggle his brother into the United States aboard an aircraft.

5.    At 8:58 a.m., on September 27, 2007, the CI was observed by surveillance to drive to 1104 W. Washington Street. Greenville. Michigan, and meet with a male subject who appeared to be late 20's early 30's.

6.    The CI entered the office of the Flat River Inn, spoke with a female employee of the hotel, and asked to speak with "Mike". The female employee then made a telephone call and immediately a male subject was observed walking into the hotel office.

7.    The following is a non verbatim summary of the conversation between the CI and PATEL: The CI asked the male subject ("Mike") if he was still interested in getting his ("Mike's") brother over here. "Mike" stated, "Yes I am", telling the CI that he/she was

2

wondering when he was going to hear back from him/her. The CI told "Mike" that his coworker and friend, a pilot, told him/her that he could help "Mike" by bringing "Mike's" brother here (to the United States) if he was still interested. The CI then asked "Mike" where they would need to fly to pick up his brother, India or Jamaica? "Mike" stated that his brother was in India. The CI then told "Mike" that we (meaning Alticor and the pilot) go all over the world and we can go anyplace you want him to go. "Mike" then stated, "I will pay whatever it takes and I will also pay your fees also." The CI then advised "Mike" that the fees or payment for flying his brother here are between "Mike" and the pilot. The CI then obtained a telephone contact number from "Mike" (616) 835-4379 and asked "Mike" when he would like to make this happen. "Mike" replied, "anytime." The CI then advised "Mike" that he/she would provide "Mike's" telephone number to the pilot.

8.  The CI was observed leaving "Mike" and the hotel by driving away at 9:03 a.m. The CI was then observed by surveillance units to drive directly to a pre-determined location where he met with me and provided a business card for Flat River Inn & Suites with a hand written telephone number of (616)-835-4379 that he/she stated was provided as the contact number for "Mike".

9.  On September 27, 2007, later in the day, Special Agent George, working in an undercover capacity and pretending to be a pilot for Alticor, met with Kalidas Prabhudas PATEL at the Meijer's parking lot, in Greenville, Michigan, to discuss smuggling PATEL's brother into the United States. The conversation evolved into one of PATEL asking that his brother, his brother's wife, and their child be flown from India to Grand Rapids, Michigan. PATEL stated that the problem was that his brother could not get a Visa. PATEL agreed to pay $50,000 in cash, $10,000 up front and the rest after they arrived. The discussion between PATEL and Special Agent George included such items as PATEL needing to getting photographs of the three individuals so that Special Agent George could have Alticor identification cards made for them. PATEL clearly indicated that he knew what he was doing was illegal and he had a lot to lose and could go to jail.

10. Special Agent George and PATEL had subsequent telephone conversations regarding the proposed smuggling of people on an Alticor jet wherein PATEL increased the number of people that he wanted smuggled to include:

a)  Dahyabhai Bholabha PATEL. DOB 03/26/1969. POB India. Brown Eyes, 62 KG, Height 5'6".

b)  Usha Dahyabhai PATEL. DOB 06/10/1967. POB India. Brown eyes. 62 KG, Height 5'3".

c)  Shyam Dahyabhai PATEL. DOB July 2, 2000. POB India. (Child of above). Brown eyes. 20 KG. Height 4'9".

3

d)      Rajusinh Gobarji THAKARDA. DOB 05/01/1967. POB India. Brown eyes, 53 KG, Height 6'5".

e)      Sanjay Chandulal Kumar PATEL. DOB 08/13/1984.  POB India.  Brown eyes, 50 KG, Height 5'7".

f)      Ashwin Kumar Babaldas PATEL. DOB 11/25/1983.  POB India.  Brown eyes, 65 KG, Height 5'5".

g)      Kamlesh Rasikbhai PATEL. DOB 12/3/1985. POB India. Brown eyes, 60 KG, Height 5'3".

h)      Sunil Dahyabhai PATEL.  DOB 10/21/1984.  POB India. Brown eyes, 52 KG. Height 5'8".

11.     It was agreed between Special Agent George and PATEL that they would meet on October 4, 2007, at 1:00 p.m.. at the Meijer's gas station parking lot. in Greenville, Michigan. where PATEL would provide to Special Agent George photographs for each of the individuals to be smuggled and $15.000 in cash as partial payment on the total fee to be paid of $80,000.

12.     On October 4. 2007. at approximately 1:00 p.m., Special Agent George while under surveillance by other ICE Special Agents, met with PATEL as planned and received from PATEL photographs of the 8 different individuals (see copies attached hereto), $15.000 in cash, and a cellular telephone to be used by Special Agent George to contact the individuals upon arrival in India.

13.     PATEL was arrested at the conclusion of the meeting with Special Agent George. PATEL was advised of the <u>Miranda</u> warnings, agreed to speak with the ICE Special Agents, and signed a written waiver to that effect.  PATEL admitted that he was attempting to smuggle eight people in total from India to the United States and that he knew that he was taking a big risk.

Karl Vlietstra - Affiant

Subscribed and sworn to before me on this  5ᵗʰ day of October, 2007.

HON. JOSEPH G. SCOVILLE
United States Magistrate Judge

4









